HALL, Judge.
Commercial Union Insurance Company and Green Steel Builders, defendants-appellants, appeal from a judgment of the district court awarding Floyd Graves, plaintiff-appellee, workmen’s compensation benefits for total and permanent disability resulting from an injury to plaintiff’s hip and back sustained in an accident which occurred February 25, 1974, while plaintiff was employed as a welder for Green Steel Builders.
Defendants-appellants make the following specifications of errors:
(1) The Court erred in holding that the plaintiff sustained an accident entitling him to an award based on total and permanent disability;
*513 (2) The Court erred in holding that the plaintiff’s testimony was worthy of belief even though he admitted executing false documents;
(3) The Court erred in failing to give the testimony of the plaintiff’s own orthopedic surgeon the weight and credit it deserved; and
(4) The Court erred in failing to recognize that the plaintiff had performed the most strenuous of jobs after the alleged injury and that the doctrine of intervening cause should apply.
While doing some overhead welding on a scaffold, plaintiff stepped back and fell from the scaffold hitting his hip and the lower part of his back on a supporting brace. He finished working that day, worked all the next day and on the following day went to see Dr. Fred Willis, his personal physician and a general practitioner in Coushatta. Dr. Willis did a complete physical examination, finding plaintiff had bilateral lumbosacral muscle spasm and tenderness in the right hip joint. Plaintiff was hospitalized in a clinic in Coushatta for six or seven days and treated with traction and medication. Upon his discharge from the clinic, Dr. Willis prescribed exercises.
Dr. Willis saw plaintiff on numerous occasions thereafter and last examined him on August 4, 1975, shortly before trial. The history given by the patient at that time was that he had reinjured his right hip and lower back. Objective findings were muscle spasms in the lower back. Subjective complaints were of pain in the right calf and the right hip. Dr. Willis’s diagnosis as of the date of his last examination was chronic lumbosacral myoliga-mentous muscle sprain. His unequivocal medical opinion was that plaintiff’s present condition related back to the initial injury in February, 1974. The doctor was of the opinion plaintiff’s productivity at heavy strenuous labor will be definitely limited and that he will not be able to participate in functions involving strenuous labor without sustaining another injury or chronic back pain. The doctor related plaintiff’s disability and continued complaints of pain to the initial injury because of the “weakness” caused by the initial injury.
Shortly after the accident, on March 4, 1974, plaintiff was examined by Dr. A. E. Dean, an orthopedic surgeon in Shreveport to whom plaintiff was referred by Dr. Willis. Dr. Dean’s diagnosis was contusion and sprain of the lumbar musculature mainly on the right side. Dr. Dean prescribed the use of heat on his back and to be up and around at home and return back to the doctor in a week. Dr. Dean felt plaintiff could possibly return to work after a week.
Dr. Dean next saw plaintiff on June 26, 1974, at which time plaintiff was still having difficulty with his back and back pain. The doctor was of the opinion plaintiff had a lumbar sprain and that he should have improved by that time but he probably reaggravated the condition at times. The doctor prescribed back exercises and a lumbar corset for immobilization of the back. He felt plaintiff should improve and be able to return to work in about a week. The doctor found his condition to be essentially the same as it was on his first examination.
Dr. Dean next saw plaintiff on October 25, 1974, at which time plaintiff had similar complaints of activities causing back pain. Dr. Dean was of the opinion plaintiff had a residual lumbar sprain or myositis in the lumbar musculature. Plaintiff was given a cortisone injection. Dr. Dean felt plaintiff had initially sprained and pulled a muscle and had probably “reaggravated” this on several different occasions. The doctor was of the opinion that plaintiff’s body structure was such that he does not tolerate heavy work. He thought the problem would eventually clear up. Dr. Dean was of the opinion plaintiff *514 was not able to work when he examined him but that he probably would be able to do so in a week or so and he would not expect him to have permanent disability.
During the months between the date of the accident and date of trial, plaintiff worked at several different jobs doing heavy work. Some three or four weeks after the accident, plaintiff went back to work for Green Steel Builders. Not long thereafter he was laid off. He began to draw workmen’s compensation benefits and was paid weekly benefits through October 22, 1974, or a total of $2,089.24. Defendants also paid medical bills in the amount of $498.50.
After plaintiff was laid off by Green Steel Builders he went to work for Pine-ville Kraft Mill where he was hired to run a pulpwood yard. He worked there about a week but lost the job when his back hurt after picking up a stick of pulpwood. Plaintiff then went to work for Glen Pharis Construction Company and worked there for over three months doing manual labor in clearing a right-of-way.
In August, 1974, plaintiff began working for Valley Electric Corporation doing right-of-way clearing work and continued in that employment until the middle of December, 1974, when he was laid off after the company learned he had a pending compensation claim for a back injury.
After the first of the year plaintiff worked for awhile helping a painter and next went to work scaling logs at the Hagewood Post and Tie Mill where he worked for about a month. Plaintiff then hired on as a welder for E & P Drilling Company, working offshore for a few days as a welder and then as a galley hand.
Defendants vigorously argue that the fact plaintiff continued to work at various jobs involving strenuous manual labor after the accident is inconsistent with his claim of total and permanent disability. Some testimony was offered by defendants tending to show that plaintiff performed his duties for Valley Electric Corporation satisfactorily and without complaint of pain. Defendants further emphasize that plaintiff did not tell any of his employers about his back injury and actually denied any back trouble when given a physical examination prior to employment by Valley Electric.
On the other hand, plaintiff explained he continued to seek employment because he had substantial obligations to meet each month and could not support his family on workmen’s compensation benefits. Plaintiff testified he worked in pain most of the time and was regularly on medication to ease the pain. He did not tell his employers about his back problem because he could not have obtained employment if he had told them. Lay testimony offered by plaintiff supported his claim of poor physical condition since the accident. Plaintiff testified he had never had any back trouble prior to the accident.
In a well-considered written opinion the trial court held plaintiff had borne his burden of proving total and permanent disability in that he was unable at the time of trial to perform the kind of heavy work he was doing when the accident occurred without significant pain as a result of his original injury. There is substantial evidence supporting the conclusions of the trial court.
Although defendants attack the credibility of plaintiff, the trial court obviously believed his testimony that he has been able to work since the accident only with significant pain. The testimony of Dr. Willis strongly supports a finding of disability to do heavy work without pain resulting directly from the initial injury. It is significant that Dr. Willis’s examination of plaintiff was shortly before trial. The testimony of Dr. Dean,, while less conclusive, shows plaintiff was, in fact, disabled on each of the three occasions when Dr. Dean saw him. Although plaintiff has worked off and on since the accident, he can do heavy work only with significant pain as a *515 result of the chronic lumbosacral myoliga-mentous muscle sprain initially sustained in the accident of February, 1974. There is evidence that plaintiff “reinjured” or “re-aggravated” the initial injury, but the evidence does not establish a specific subsequent or intervening accident as the cause of his current disability. Under the jurisprudence plaintiff is entitled to workmen’s compensation benefits based on total and permanent disability.
For the reasons assigned, the judgment of the district court is affirmed at appellants’ costs.
Affirmed.